# UNITED STATES COURT OF APPEALS

## FOR THE FIFTH CIRCUIT

No. 97-50241
Summary Calendar

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOSE VILLA YANEZ, also known
as Jose Luis Ayala,

Defendant-Appellant.

Appeal from the United States District Court
For the Western District of Texas
(SA-95-CR-319-1)

January 26, 1998

Before POLITZ, Chief Judge, KING and DENNIS, Circuit Judges.

POLITZ, Chief Judge:[*]

Jose Villa Yanez appeals a jury conviction for conspiracy to possess cocaine

with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 846, contending

that: (1) the indictment should have been dismissed because of racial

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be
published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

discrimination in the selection of the grand jury and that his trial should have been stayed to allow the presentation of evidence of racial discrimination in the selection of the petit jury; (2) the district court should have granted a mistrial because of an alleged violation of an order *in limine*; (3) evidence of Yanez's prior conviction was admitted in violation of Fed. R. Evid. 404(b); and (4) the evidence was insufficient to support his conviction. Our review of the record and briefs reflects no reversible error and we affirm.

## Background

Yanez contacted a confidential informant advising that he was looking for a source of cocaine. After numerous telephone negotiations and meetings with the confidential informant and others, Yanez was arrested and charged by a grand jury with conspiracy to possess cocaine with intent to distribute, attempting to possess cocaine with intent to distribute, and aiding and abetting. After a trial by jury Yanez was convicted of the conspiracy charge and the attempt and aiding-and-abetting charges were dismissed. Yanez was sentenced to 240 months of imprisonment to be followed by a 10-year term of supervised release. He timely appealed.

## Analysis

1. Representative Jury Issue

Yanez contends that in the jury selection process he was denied his right to a grand jury and petit jury selected from a fair cross section of the community in violation of 28 U.S.C. § 1861 and the sixth amendment. In **Duren v. Missouri** the Supreme Court announced a test for establishing violation of a defendant's right to a representative jury which requires the defendant to show:

> (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in the venires from which the juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.[1]

The trial court found that the first prong of the **Duren** test was met but that Yanez had failed to establish that African-Americans or Hispanics were underrepresented on the grand jury panel or that minorities systematically were excluded from grand or petit jury venires. We review this factual determination for clear error.[2]

The second prong in **Duren** requires proof that a distinctive group in the community is not fairly represented in jury venires. Yanez compares the racial and ethnic composition of the grand jury to that of the gross voting-age population in

---

[1] 439 U.S. 357, 364 (1979).

[2] **United States v. McKinney**, 53 F.3d 664 (5th Cir. 1995).

the relevant court division community. This is not the proper base; rather, one must examine the jury-eligible population.[3] Nevertheless, even accepting the figures used by Yanez, he fails to prove that any claimed underrepresentation rises to a legally significant level.

Yanez contends that comparative disparity, rather than absolute disparity, is the more appropriate measure to be used by this court to determine the severity of a minority group's underrepresentation on jury panels.[4] We agree with the trial court that in cases where "there is no other evidence other than statistics to show a violation of the fair-cross-section requirement, absolute disparity is an appropriate yardstick by which to measure the severity of minority's under representation."[5] Using Yanez's statistics the trial court found an absolute disparity of 2.15 % for African-Americans and 9.62% for Hispanics in the grand jury panel, and an

---

[3] **United States v. Fike**, 82 F.3d 1315 (5th Cir.), cert. denied; **Douglas v. United States**, 117 S.Ct. 241 (1996).

[4] Absolute disparity measures the difference between the proportion of the distinctive groups in the population from which the jurors are drawn and the proportion of the groups on the jury list. Comparative disparity looks to the percentage by which the probability of serving as a juror is reduced for people in the distinctive group and is calculated by dividing the absolute disparity by the percentage of the group in the overall population and then multiplying by 100%.

[5] **United States v. Yanez**, No. 95-319 (W.D.Tex. Oct. 11, 1996). Although absolute disparity is an appropriate method for dealing with jury challenges, it is not the sole means that may be used to establish unlawful jury discrimination. See **United States v. Butler**, 615 F.2d 685 (5th Cir. 1980).

absolute disparity of 6.15% for African-Americans and 5.63% for Hispanics on the petit jury panel. This level of disparity fails to satisfy the second prong of the **Duren** test.[6]

Even if the level of disparity was statistically significant, Yanez has failed to satisfy the third **Duren** prong, systematic exclusion. Yanez maintains that minorities effectively are systematically excluded from the jury selection process by the choosing of names of potential jurors from lists of registered voters rather than from a broader pool, such as lists of licensed drivers. Even if, as Yanez contends, African-Americans and Hispanics vote in a lower proportion than the rest of the population, that alone does not make the jury selection process illegal absent proof that obstacles were placed in the path of members of the minorities attempting to register to vote or to vote.[7] The Jury Selection Service Act[8] expressly provides for the use of voter registration lists. Such lists may be used as the sole source for selecting jury pools. This assignment of error is without merit.

Nor do we find any merit in Yanez's claims of an error in the trial court's refusal to grant a mistrial when an undercover officer witness unexpectedly

---

[6] **United States v. Maskeny**, 609 F.2d 183 (5th Cir. 1980).

[7] **Floyd v. Garrison**, 996 F.2d 947 (8th Cir. 1993).

[8] 28 U.S.C. §§ 1861-1869.

mentioned that Yanez was a drug dealer, or in its ruling on Rule 404(b) evidence. Finally, his claim that the evidence was insufficient for a conviction because he was entrapped does not pass muster. No such plea was raised in the trial court and we review only for plain error.[9] Our review of the record persuades that the evidence adduced strongly supports a finding of Yanez's predisposition to commit the charged offense.

The convictions and sentences are AFFIRMED.

---

[9] **Douglas v. United Auto Ass'n**, 79 F.3d 1415 (5th Cir. 1996) (en banc).